## Mine Explosives

BARD, Attorney General, September 15, 1938.—You have asked to be advised as to the extent to which mine operators are exempt from the provisions of the Act of July 1, 1937, P. L. 2681, 73 PS §151, et seq., which regulates the manufacture, storing and possession of explosives.

It appears that many mine operators have comparatively large supplies of explosives constantly available for distribution to and use by the miners employed by them. It is the contention of certain of these operators that all explosives possessed or stored by them pending distribution are in actual use in legitimate and lawful coal mining operations, and that they are consequently exempt from the provisions of the Act of 1937, supra, by virtue of the proviso contained in section 1 of that act which reads as follows:

"Provided, That nothing contained in this act shall be construed to apply to the *actual use* of explosives in legitimate and lawful coal mining operations, agricultural work, or to the military and naval forces of the United States, or to the transportation of explosives upon vessels or railroad cars when in conformity with the rules of the Interstate Commerce Commission." (Italics supplied.)

In ascertaining the proper meaning of the phrase "actual use in legitimate and lawful coal mining operations", it is appropriate to refer to certain well-established rules of statutory construction. Section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, provides in part as follows:

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law . . . (3) the mischief to be remedied; (4) the object to be attained . . . (6) the consequences of a particular interpretation".

The Act of July 1, 1937, supra, is a proper exercise of the police power on the part of the General Assembly of the Commonwealth of Pennsylvania, and its primary objective is to require, for the safety of the public, that explosives be stored in suitable magazines insofar as is reasonable and practicable. To adopt the broad exemption urged by certain mine operators would be to condone the very type of hazard which this statute was designed to abolish and would render its provisions ineffective to a

considerable extent. It is our opinion that, if the proviso of section 1 be construed in accordance with the aforementioned rules of statutory construction, the conclusion is inescapable that the legislature did not intend to exempt all explosives possessed or stored by mine operators from the safeguards prescribed by the act. Furthermore, if the legislature had intended to enact an exemption broad enough to exclude the mere possession and storage of explosives by mine operators, it would have been much more simple and expeditious to provide merely that the statute should not apply to explosives in the possession of mine operators. In limiting the operation of the proviso to explosives in actual use, the legislature has clearly indicated that it is not to be construed so broadly as to exempt mine operators completely from the requirements of the statute.

A somewhat analogous situation was involved in the case of Board of Equalization of Carter County et al. v. Carter Oil Co., 152 Okla. 99, 3 P. (2d) 816, 77 A. L. R. 1060 (1931). This case involved the interpretation of a statute of the State of Oklahoma which relieved from the burden of ad valorem taxation:

". . . appliances and equipment *used in and around* any well producing petroleum or other crude or mineral oil or natural gas, or any mine producing asphalt, or any of the mineral ores aforesaid *and actually used in the operation of such well or mine*".

A portion of the property involved in this case consisted of a warehouse and its contents which included material, equipment, and supplies concentrated therein for the purpose of being used in and around the producing oil wells of the Carter Oil Company. The court held that this property was not within the statutory exemption quoted above, making the following comment (p. 101):

"We consider, first, the item of the warehouse and its contents, consisting of material, equipment, and supplies concentrated therein for the purpose of *being used* in and around the producing oil wells of the Carter Oil Company. This property is not in actual use, but is stored in a central

location for convenience and intended for future use in the operation of leases belonging to the company and for the production of oil. This item is not exempt from ad valorem taxation."

Similarly, the mere possession and storage of explosives by mine operators does not bring them within the exemption set forth in section 1 of the Mine Explosives Act of 1937, and in this connection it is appropriate to refer to section 52 of the Statutory Construction Act of 1937, supra, which provides in part as follows:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others . . .

"(5) That the Legislature intends to favor the public interest as against any private interest."

Having arrived at the conclusion that the storage of explosives by mine operators is not entirely exempt from the requirements of the Mine Explosives Act of 1937, we are immediately confronted with the problem as to when explosives may fairly be said to be in actual use in legitimate and lawful coal mining operations. This, of course, is a practical question for which no universally applicable answer can be devised. In each case the answer depends upon the peculiar circumstances involved. We can do no more than set forth certain general rules to aid you in determining whether or not the Act of 1937 is applicable to explosives owned and stored by any particular coal company, and indicate certain circumstances in which we feel the act is clearly applicable or inapplicable, as the case may be.

As has already been indicated, we feel that the mere storage and possession of explosives by a mine operator is not exempt from the provisions of this statute, and that a storage of a comparatively large amount of such explosives awaiting future distribution to the miners is only permissible under the conditions prescribed therein. On the other hand, small quantities of explosives destined for immediate use in mining operations must be

stored temporarily at various places outside the mine pending distribution to the miners, and it would be impracticable and unreasonable to subject each such storage of explosives to the requirements of the Act of 1937. We feel that it was this type of situation which the legislature had in mind when it provided that nothing·contained in the statute should be construed as applying to the actual use of explosives in legitimate and lawful coal mining operations.

You are advised, therefore, that a mine operator's temporary storage of a day's supply of explosives pending distribution to its miners for use in its own mines is exempt from the provisions of the Act of July 1, 1937, P. L. 2681, but that the possession and storage of larger amounts of explosives for longer periods of time is subject to the provisions of that statute.